# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| RAYMOND B. ULICKI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JOANNE B. BARNHART, Commissioner of Social Security,<br><br>　　　　Defendant. | No. C05-4060-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*A. Synopsis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*B. Standards Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　*A. The Record* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　*B. The ALJ's Decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　*C. Judge Zoss's Report And Recommendation* . . . . . . . . . . . . . . . . . 8
　　*D. Ulicki's Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*III. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　*A. The ALJ's Decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　*B. Residual functional capacity* . . . . . . . . . . . . . . . . . . . . . . . . . . 13
　　*C. Should The Court Remand Or Order Benefits?* . . . . . . . . . . . . . . 16

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

### A. *Synopsis*

The plaintiff, Raymond B. Ulicki, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Title II disability insurance ("DI") and Title XVI supplemental security income ("SSI") benefits. Ulicki sought benefits on the basis of claims he is disabled due to vision problems, dizziness, severe headaches, weakness, loss of physical coordination, memory problems, back and hip pain (R. at 79). Ulicki also has a history of strokes. Ulicki claims these conditions prohibit him from working an eight hour day, because he cannot "handle physical labor" nor work in hot weather, and had "poor attendance on the job" from the above listed conditions. (*Id.*) The ALJ's denial of benefits was affirmed at each subsequent stage of the administrative proceedings and, consequently, became the decision of the Commissioner of Social Security, prompting Ulicki to file the present action for judicial review. This matter comes before the court pursuant to United States Magistrate Judge Paul A. Zoss's Report and Recommendation in this judicial review of the decision by an administrative law judge ("ALJ") that Ulicki is not entitled to Title II disability insurance ("DI") or Title XVI supplemental security income ("SSI") benefits. Judge Zoss recommended that the Commissioner's denial of benefits be affirmed. *Ulicki v. Barnhart*, C05-4060-MWB, 2006 WL 668263, *1 (N.D. Iowa March 15, 2006). Ulicki filed an objection to the Report and Recommendation. (Doc. No. 13). The court finds this matter is now fully submitted and ready for consideration.

## B. Standards Of Review

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)). Ulicki has made specific, timely objections in this case. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required here. *See* 28 U.S.C. § 636(b)(1).

In this case, the court's *de novo* review requires application of the standard of judicial review for cases involving the denial of social security benefits based on 42 U.S.C. § 405(g), section 405(g) which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." This court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). This standard of review was explained by the Eighth Circuit Court of Appeals as follows:

> Our standard of review is narrow. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir.

> 1998). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a decision." *Id*. If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.

*See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

The Eighth Circuit Court of Appeals also has explained, "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Easter v. Bowen*, 867 F.2d 1128, 1131 (8th Cir. 1989)); *accord Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (the court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial"); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."). In reviewing the record for substantial evidence, the court may not make its own findings of fact by re-weighing the evidence and substituting its own judgment for that of the Commissioner. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). Weighing the evidence is a function of the ALJ, who is the "statutory" fact-finder. *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Instead, the court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Krogmeier*, 294 F.3d at 1022; *accord Jones v. Barnhart*, 335 F.3d 697, 698 (8th. Cir. 2003). In addition, the court must also review the Commissioner's decision and decide whether the Commissioner considered and applied the

proper legal standard. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n. 2 (8th Cir. 1995).

## *II. BACKGROUND*
### *A. The Record*

Ulicki was born in 1960, he is 5'9", and weighs 220 pounds. Ulicki finished eighth grade and has difficulty reading and writing. Ulicki has had no other education or training since eighth grade. Ulicki worked as a bricklayer for many years, a job that required him to lift eighty to ninety pounds. (R. at 318-320). Ulicki suffered a stroke on December 20, 2000 and was hospitalized for ten days. (R. at 164-177, 321). Ulicki may have suffered a stroke shortly after the first one. (R. at 179-180) Ulicki continues to suffer from shaking, dizziness, and vision problems. (R. at 322-324). Ulicki contends his vision is very restricted and that he has attempted to utilize bi-focals without much vision improvement. (R. at 324-327, 331, 349). Ulicki also states that he suffers from debilitating headaches. (R. at 330-332). Ulicki has been diagnosed with degenerative disc disease in his back and hips. (R. at 341-342). In addition, Ulicki complains of occasional chest pains and expresses anxiety of working around other people. (R. at 342-348).

The record reveals that Ulicki has been seen by physicians in Iowa City, Iowa for diagnosis and treatment of his stroke. (R. at 165). Subsequently, he was also treated for groin hematoma.

In 2001, Ulicki saw Dr. Rogers at the request of Disability Determination Services for an evaluation. (R. at 203-207). Dr. Rogers found Ulicki's memory functioning to be in the retarded range to average. (R. at 205). Dr. Rogers also noted that Ulicki's functioning was consistent with his stroke history specifically noting that Ulicki's working and auditory memory were below average, though adequate for most tasks, but that

5

Ulicki's visual memory was even lower and could create difficulties in functioning. (R. at 203-206). Dr. Rogers also diagnosed Ulicki with a hysteroid personality and stated: "He is misanthropic in many ways, this would diminish his ability to interact appropriately with supervisors, coworkers, and the public." (R. at 206).

Ulicki then saw Dr. Garfield, a mental health practitioner, who stated that Ulicki had an unspecified cognitive disorder. (R. at 232).

Subsequently, Ulicki was evaluated and treated at the University of Iowa Opthamology clinic due to the worsening vision in his right eye evidently due to optic nerve drusen . (R. at 239). Ulicki also experienced some coordination problems with his hands and was diagnosed with probable carpal tunnel syndrome. (R at 239-240).

Dr. Latella, D.O., examined Ulicki and determined that Ulicki did have degenerative changes in the lumbar spine, and 20/50 vision and 20/30 vision uncorrected. (R. at 248-250). Next, Dr. Daly, D.O. reviewed Ulicki's record for the purpose of completing a Physical Residual Functional Capacity Assessment form. (R. at 254-260). Dr. Daly, relying on Dr. Latella's physical evaluation, determined Ulicki's complaints of back pain lacked credibility because Ulikchi appeared to enjoy a complete range of daily activities. (R. 256-257).

Next, Ulicki saw another mental health practitioner, Dr. Christiansen. Dr. Christiansen reviewed the record and determined that Ulicki's mental condition had not worsened. (R at 279-280). Ulicki continues to be seen by clinics and physicians for ongoing chest complaints, dizziness, and headaches. (R. at 290-294).

Thus, the record indicates a long, continuous progression of worsening physical and mental disorders and little, if any, improvement.

### B. The ALJ's Decision

The ALJ found:

> Ulicki has not engaged in substantial gainful activity since his alleged disability onset date of October 15, 2000. (R. 18) He found Ulicki has severe impairments including "arthritis of the lumbar spine, status post internal carotid thrombosis, status post embolism to the right hemisphere of the brain, and hysteroid personality." (R. 19). However, he further found Ulicki's impairments, either singly or in combination, did not reach the Listing level of severity. (R. 19-20). The ALJ found the objective medical evidence did not support the severity of limitations alleged by Ulicki. He noted "[n]umerous examinations of [Ulicki] have shown his physical limitations are at most mild," and the State agency consultants have opined he could perform work at the light exertional level despite his impairments. (R. 20-21) The ALJ accepted the State agency consultants' opinions that Ulicki does not have a severe mental impairment and "few, if any, mental limitations." (R. 21).

*Ulicki v. Barnhart*, C05-4060-MWB, 2006 WL 668263, *10 (N.D. Iowa March 15, 2006).

However, the ALJ proceeded to outline the following limitations:

> [T]he claimant can lift no more than 20 pounds occasionally and no more than 10 pounds frequently. The claimant also cannot lift above shoulder level. The claimant can only walk for one block at a time. He can stoop and climb stairs occasionally. He can bend, squat, and crawl seldom. The claimant can never climb ladders or perform work on platforms. The claimant's work should not require fine visual acuity on the right side due to anti-coagulates. He also should avoid sharp objects and tools. The claimant can sit and stand for 8 hours in an eight-hour day with normal breaks. The claimant can perform simple grasping with his right hand as well as gross manipulation, basic fingering, handling, and feeling frequently. The claimant, however, cannot do these

7

> activities continuously. In regards to his left hand, the claimant can perform all the above-cited activities. The claimant cannot push or pull more than 10 pounds. He also must avoid excessive heat and should not operate hazardous equipment. In regards to his mental abilities, the claimant has a limited education and his work activities should involve only basic reading, writing, and mathematics. The claimant is also limited to simple routine repetitive activities. He cannot have more than superficial interaction with the public. His work also should not be stressful and should not be performed at a fast pace with strict quotas or strict time frames. Additionally, the claimant's duties should not change frequently and his need to make decisions should be infrequent. He also should not be required to remember detailed information to complete job duties or relate detailed information or data to others. With regard to Ulicki's mental abilities, the ALJ found his "mental condition causes mild limitations in his activities of daily living, moderate difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, or pace."( *Id.*) He concluded Ulicki's "mental condition is not expected to cause episodes of deterioration or decompensation of an extended duration."( *Id.*)

*Id*. at 11.

### C. *Judge Zoss's Report And Recommendation*

Judge Zoss's Report and Recommendation first addressed Ulicki's physical disabilities as follows;

> The record evidence indicates Ulicki had a stroke from which he largely recovered. He continues to have problems with the vision in his right eye, but his vision has not worsened since his stroke, and indeed, Ulicki declined a prescription for eyeglasses. Furthermore, he was uncooperative during his eye examination to the extent that his diagnosis of optic nerve head drusen was noted to be partially guesswork. Ulicki also has

> some problems with his wrists and hands which doctors have opined are unrelated to his stroke. He has been diagnosed with probable carpal tunnel syndrome, and wrist splints have been prescribed. However, Ulicki has not sought further treatment and surgery has never been recommended. The ALJ's hypothetical question to the VE took into consideration the fact that Ulicki cannot perform continual, repetitive actions with his right hand. Ulicki also claims disability due to arthritis of his lumbar spine, but during his examination by Dr. Latella, Ulicki demonstrated full ranges of motion of all of his joints and normal gait. His full range of daily activities also demonstrates functional abilities beyond what he alleges. Similarly, the record evidence indicates Ulicki's mental limitations are quite mild, and would cause him little, if any, difficulty on the job.

*Id*. at 15.

As to Ulicki's credibility, Judge Zoss opined as follows:

> The Commissioner devotes the majority of her argument to the ALJ's credibility assessment (*see* Doc. No. 9, pp. 12-16)-an interesting fact given that Ulicki does not discuss the credibility determination at all in his brief. The Commissioner then argues the ALJ performed a proper determination of Ulicki's residual functional capacity based on the evidence of record, and the record contained adequate evidence to make such a determination without further development.

*Id*.

Judge Zoss concluded:

> In summary, the court finds there was no need for the ALJ to develop the record more fully in order to determine that Ulicki's residual functional capacity, from both a physical and a mental standpoint, would not prevent him from working. The Commissioner did not attempt to distinguish *Nevland* and *Lauer* because there was no need to do so. The record contains

9

> substantial evidence to support the ALJ's determination that Ulicki is not disabled.

*Id*. at 16.

### D. Ulicki's Objections

Ulicki objects to the Report and Recommendation. (Doc. No. 12.) Ulicki argues that the ALJ failed to fully and fairly develop the medical evidence regarding Ulicki's work related limitations. Further, Ulicki argues that the ALJ failed to properly consider the opinions of the non-examining state agency medical consultants, who found greater visual limitations than the ALJ. Finally, Ulicki argues the ALJ failed to meet his burden, as required in step four, of proving there is other work Ulicki can perform due to inconsistencies not resolved by the ALJ because the ALJ failed to fully and fairly develop medical evidence regarding Ulicki's work-related limitations. For these reasons, Ulicki asks the court to remand this matter for further proceedings.

## III. LEGAL ANALYSIS
### A. The ALJ's Decision

As explained in more detail above, this court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). The Commissioner must, in the first instance, follow a five-step sequential evaluation process, as outlined in 20 C.F.R. §§ 404.1520 and 416.920, as follows:

(1) Determine whether the claimant has engaged in substantial gainful activity (if so, the claimant is not disabled); (2) if the claimant has not engaged in such activity, determine whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities (if not, the claimant is not disabled); (3) if so, determine whether the impairment meets or equals one of the presumptively disabling impairments listed in the regulation (if so, the claimant is disabled); (4) if the impairment is severe, but does not meet or equal one of the presumptively disabling impairments, determine the claimant's "residual functional capacity" to determine whether the claimant can perform past relevant work; and (5) if the claimant's residual functional capacity is such that the claimant cannot perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience, and that such other work exists in significant numbers in the national economy (if there is no such work, the claimant is entitled to disability benefits). In this case, it appears that the ALJ found:

> "In regards to his mental abilities, the claimant has a limited education and his work activities should involved only basic reading, writing, and mathematics. The claimant is also limited to simple routine repetitive activities. He cannot have more than superficial interaction with the public. His work also should not be stressful and should not be performed at a fast pace with strict quotas or strict timeframes. Additionally, the claimant's duties should not change frequently and his need to make decisions should be infrequent. He also should not be required to remember detailed information to complete job duties or relate detailed information or data to others."

(R. at 21). Despite such findings, the ALJ found that Ulicki could perform work as a parking lot attendant or cashier. (R. at 22-23).

11

The Social Security regulations contain detailed instructions regarding how to evaluate medical evidence, including medical opinions. *See* 20 C.F.R. § 404.1527 (2003), *see also* 20 C.F.R. § 416.927 (2003). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2003). Generally, more weight is given to treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2003). The weight to be given consultative evaluations and opinions is determined using the same factors as used for treating physician opinions. *Id.* Finally, "the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (*citing Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (2003). The ALJ is required to evaluate every medical opinion he receives. 20 C.F.R. § 404.1527(d) (2003). Additionally, when considering whether the ALJ has properly denied Social Security benefits, the court must determine whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence on the record as a whole. *See Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996). ("In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision.") (quoting *Easter*, 867 F.2d at 1131); *accord Baldwin,* 349 F.3d at 555 (the court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence

appropriate weight when determining whether the overall evidence in support is substantial"); *Howard*, 255 F.3d at 581 ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.").

## B. *Residual functional capacity*

At the fourth step in the analysis, determination of residual functional capacity, the ALJ found that although Ulicki is incapable of returning to his past relevant work, he could perform the work of a parking lot attendant or cashier. (R. at 22-23). If the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving RFC Assessments, etc., 68 Fed.Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon*, supra; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. *See* 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the

Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

This is a case in which the testimony of a vocational expert setting out precisely how Ulicki's psychological, educational, and physical impairments, in totality, would have been critical to the determination of disability. Moreover, a claimant may be disabled under the Act by reason of a medically determinable physical *or mental* impairment, and it is proper and necessary to include any mental impairments, including educational ability, in a hypothetical question to a vocational expert. *See Camp v. Schweiker,* 643 F.2d 1325, 1331-32 (8th Cir. 1981). The courts have recognized that vocational expert testimony is required in order to determine whether a claimant suffers from a non-exertional disability regardless of the findings directed by the medical-vocational guidelines.

> It is well settled Eighth Circuit case law that, having found Plaintiff is unable to do her past relevant work, the burden of proof shifted to the Commissioner to come forward with medical evidence to prove Plaintiff has a residual functional capacity for other work, and that other work exists in significant numbers in the national economy that such a person is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983); *Soth v. Shalala*, 827 F. Supp. 1415, 1417 (S.D.Iowa 1993). It is also well settled law that in order to meet the second prong of the Commissioner's burden, in cases where referral to the medical vocational guidelines (Grid) is inappropriate, the ALJ must rely on the testimony of a vocational expert in response to a hypothetical question which precisely sets out the claimant's impairments and limitations. *Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir. 1990).

*Haines v. Apfel*, 986 F. Supp. 1212, 1215 (S.D.Iowa 1997).

Here, one of the mental health professionals opined that Ulicki's ability to remember, understand, and carry out instructions requiring attention, concentration, and pace was extremely limited. (R. at 206.) Nevertheless, the ALJ formulated a residual functional capacity that included no limitations regarding mental acuity despite several diagnoses of "retarded to average range functioning" and did not require the vocational expert to testify as to the effect of any mental impairments. (R. 15). Thus, the ALJ lacked the necessary evidence from a vocational expert to meet the Commissioners's burden to prove that Ulicki can perform substantial gainful employment other than his past relevant work. *Garrett*, 471 F.2d at 603-04 (if the ALJ cannot use the "grids," the ALJ can only meet this burden by producing a vocational expert who expresses the opinion that the claimant can perform alternative employment); *accord Johnson*, 486 F.2d at 1025; *Haines*, 986 F. Supp. at 1215. In the present case, the record lacks substantial evidence to make a determination that Ulicki is able to work full-time at any occupation. The evidence actually *suggests* the contrary, although the record does not contain substantial evidence to support either conclusion. The only support for the ALJ's conclusion that Ulicki's mental illness would not affect his ability to work is the opinion of a consulting physician who did not factor the non-exertional limitations and mental health professionals that likewise did not factor physical limitations in their evaluations.

Under these circumstances, the court finds that the ALJ's decision is not supported by substantial evidence on the record as a whole.

### C. *Should The Court Remand Or Order Benefits?*

The court may affirm, modify or reverse the Commissioner's decision with or without remand to the Commissioner for rehearing. 42 U.S.C. § 405(g). Where a remand would only delay the inevitable award of benefits to which the claimant is entitled, the court may reverse and order an award of benefits. *Duncan v. Barnhart*, 368 F.3d 820, 824 (8th Cir. 2004); *Cline v. Sullivan*, 939 F.2d 560, 569 (8th Cir. 1991) (where the record itself "convincingly establishes disability and further hearings would merely delay receipt of benefits, an immediate order granting benefits without remand is appropriate") (citing *Jefferey v. Secretary of H.H.S.*, 849 F.2d 1129, 1133 (8th Cir. 1988); *Beeler v. Bowen*, 833 F.2d 124, 127-28 (8th Cir. 1987); *accord Thomas v. Apfel*, 22 F. Supp. 2d 996, 999 (S.D. Iowa 1998) (where claimant is unable to do any work in the national economy, remand to take additional evidence would only delay receipt of benefits to which claimant is entitled, warranting reversal with award of benefits). In this case, notwithstanding the lack of substantial evidence to support the ALJ's findings, the court cannot find that a remand would only delay the award of benefits to which Ulicki is entitled, *Duncan*, 368 F.3d at 824, or that the record "convincingly establishes disability." *Cline*, 939 F.2d at 569. Rather, the record was so poorly developed by the ALJ, and the ALJ failed to produce a Vocational Expert's opinion concerning Ulicki's ability to perform alternative, real world employment when required by Ulicki's non-exertional limitations *including education, emotional/social disorders, and mental health disorders*, that a remand is required. *See Forehand,* 364 F.3d at 988, citing, among other cases, *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc).

It is the ALJ's duty to thoroughly examine the facts and create a complete record in each case.

> It merits comment, however, that the hearing respondent received, . . ., if it is in any way indicative of standard practice, reflects poorly on the Administrative Law Judge's adherence to what Chief Judge Godbold has called his "duty of inquiry":
>> "[T]here is a 'basic obligation' on the ALJ in these nonadversarial proceedings to develop a full and fair record, which obligation rises to a "'special duty . . . to scrupulously and conscientiously explore for all relevant facts'" where an unrepresented claimant has not waived counsel. This duty of inquiry on the ALJ would include, in a case decided under the grids, a duty to inquire into possible non-exertional impairments and into exertional limitations that prevent a full range of work." *Broz v. Schweiker*, 677 F. 2d 1351, 1364 (CA 11, 1982).

*Heckler v. Campbell*, 461 U.S. 458, 471 103 S. Ct. 1952 (1983). Here, the ALJ failed to meet that "basic obligation." The court trusts that, on remand, the ALJ will not fail to do so again.

## *IV. CONCLUSION*

Upon *de novo* determination of those portions of the Report and Recommendation to which objection has been made, the court concludes that the ALJ failed to fairly develop the record and that the denial of benefits is not supported by substantial evidence. The Report and Recommendation recommending a different disposition of this matter is **rejected** § 28 U.S.C. 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

Because the ALJ failed to fully develop the record, the court **reverses** the ALJ's decision and **remands** this case to the Commissioner for further development of the record consistent with this opinion. On remand, (1) the ALJ must give appropriate weight to the

17

opinions of Ulicki's physicians, and other health providers; and (2) the ALJ must utilize the services of a vocational expert in determining the non-exertional limitations upon Ulicki's employment. The Commissioner shall, thereafter, issue a new decision consistent with the opinion of this court.

**IT IS SO ORDERED.**

**DATED** this 16th day of August, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA